**HALLIBURTON COMPANY,**
Appellant,

v.

**Carlos SANCHEZ, Appellee.**

No. 04–97–00948–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 27, 1999.

Rehearing Overruled July 7, 1999.

William H. Bruckner, Sylvia Davidow, Bruckner & Sykes, L.L.P., Houston, for Appellant.

George G. Brin, R. Barry Brin, Jr., Brin & Brin, P.C., San Antonio, Thomas F. Nye, Brin & Brin, Corpus Christi, for Appellee.

Before Alma L. LOPEZ, Justice Catherine STONE, Justice Paul W. GREEN, Justice

## OPINION

LOPEZ, Justice.

As a result of a jury trial, appellant, Halliburton Company ("Halliburton") was

found liable for intentional infliction of emotional distress and willful and malicious conduct. The trial court's judgment awarded Sanchez $ 2,618,904.62. On appeal, appellant raises four issues. In its second issue, Halliburton asserts that no evidence, or in the alternative insufficient evidence, existed to support the claim of intentional infliction of emotional distress. We agree that the trial court erred in failing to grant appellant's motions for a directed verdict, judgment notwithstanding the verdict and a new trial, and reverse and render a take nothing judgment.

### Statement of Facts

Appellee, Carlos Sanchez, began working for Halliburton on August 12, 1979 as an equipment operator. Sanchez was employed for approximately fourteen years, until he was fired on April 19, 1993, as a result of testing positive for cocaine in a company drug test. At the time of his termination, Sanchez had recently been transferred, at his request, to a new department because of recurring health problems.

Consistent with company policy, Halliburton conducted an employee drug test, or "search," at its company site in Laredo, Texas. District manager James Otts had requested the testing as a result of recent thefts occurring in the plant. Pursuant to company policy, Halliburton contracted with an outside laboratory, Laboratory Specialists, Inc. ("LSI"), to conduct testing on urine samples collected from its employees. In addition, Halliburton contracted with a second firm, Security Concepts International, Inc. ("SECON"), to conduct the actual collection of urine samples.

The collection at the Laredo plant was the first collection ever done for Halliburton by SECON. Business relations between Halliburton and SECON were conducted via Roy Leonard, SECON's contact in the Louisiana offices of Halliburton. Leonard was present during SECON's testing of employees in Laredo. According to the record, his presence at the Laredo site was needed to gain information, if any, from employees concerning the thefts. After the test on April 13th, Leonard was responsible for the delivery of urine samples to LSI in Louisiana.

Halliburton provides a written protocol on how urine sample tests should be conducted. This protocol was submitted into evidence in the present case. Collection teams are responsible for collecting employees's urine samples. Each team consists of a collector and a monitor. The collector manages the necessary paperwork which each employee must fill out prior to submitting a sample. The monitor accompanies the employee and secures the restroom area in which the employee will give their sample. Once a sample is collected, the cup is never handled by either the collector or the monitor. It is the employee's responsibility to place the sample cup in an ice chest containing all samples.

Two SECON collection teams and one operations manager arrived at the Halliburton facility at 12:30 p.m. on April 13, 1993. Elwood Dupuy and Keith Judice comprised the team which took Sanchez's sample. Their work station was confined to a cubicle area located within Halliburton's offices. According to the roster, Sanchez's sample was taken around 6:35 p.m., and was the thirtieth of thirty-six taken that afternoon. Sanchez filled out the necessary paperwork and noted that he was on medication. He provided a sample which he then deposited in an ice chest with other samples. At trial, Sanchez testified that he witnessed no irregularities during the test. After the last sample was received at approximately 7:30 p.m., the team secured the ice chest with evidence tape. They then relinquished control of the ice chest to Ray Leonard.

After being notified that he tested positive for cocaine, Sanchez was terminated from his job by Karl Theis, Otts's assistant. At trial, David McGill, a former Halliburton employee, who also tested pos-

itive for drug use, testified that he had overheard a conversation between Barry Carter, Sanchez's immediate supervisor, and Theis on the day of the test. McGill heard the following statement out of context, "... that regardless of what the [out-]come is[,] Carlos is not going to pass the test." On the same day, McGill informed Sanchez of what he had overheard.

At his termination interview with Theis, Sanchez denied any use of cocaine and insisted that any positive results may have resulted from medications which he was taking for diabetes, cholesterol, and high blood pressure. Theis testified that he gave Sanchez the opportunity to bring the medications which he was taking to be tested. Sanchez failed to bring in all his medication. In addition, Sanchez never mentioned the statement overheard by McGill to Theis.

## Standard of Review

Halliburton asserts that no evidence, or insufficient evidence, existed to support the claims of intentional infliction of emotional distress and willful · and malicious conduct. Where the appellant raises no evidence and insufficient evidence issues on appeal, we review the no evidence issue first. *Glover v. Texas Gen, Indem., Co.,* 619 S.W.2d 400, 401 (Tex.1981). In reviewing no evidence issues, we review all the evidence in the light most favorable to the finding and indulge all reasonable inferences therefrom, disregarding all contrary or conflicting evidence and inferences. *State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex.1998). We must sustain a no evidence issue where the record contains no more than a scintilla of evidence to support the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs,* 960 S.W.2d 41, 48 (Tex.1998).

## Intentional Infliction of Emotional Distress

■ Under Texas case law, the elements of intentional infliction of emotional distress include the following: (1) the de-fendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993) (citing Restatement (Second) of Torts § 46 (1965)); *Porterfield v. Galen Hospital Corp., Inc.,* 948 S.W.2d 916, 920 (Tex. App.—San Antonio 1997, writ denied). We address each element individually, and find that no evidence existed in the record to support the first element—intent.

### Intent

■ Intent exists where the actor desires to inflict severe emotional· distress and also knows that distress will be certain or substantially certain. *Diamond Shamrock Refining & Marketing Co. v. Mendez,* 809 S.W.2d 514, 523 (Tex.App.—San Antonio 1991), *affirmed in part and reversed in part,* 844 S.W.2d 198 (Tex.1992). Intent can also be proven where the actions in question are undertaken with a deliberate disregard of the high degree that emotional distress will follow. *Id.* Sanchez argues the following evidence constituted overwhelming circumstantial evidence that Halliburton acted intentionally and recklessly:

(1) Sanchez denied ever using cocaine and no evidence was presented by Halliburton that he did.

(2) David McGill testified that he overheard Carter and Theis discussing Sanchez and overheard the statement, "... that regardless of what the [out]come is[,] Carlos is not going to pass the test."

(3) McGill also testified that he observed that the cubicle in which the testing samples were located was empty, and that the ice chest containing the samples was missing.

(4) Theis was an admitted cocaine user. He testified that he had used cocaine off and on for approximately fifteen to

twenty years—three to four times a year for five to seven hours at a time. (5) Theis also had prior notification, up to two days, that a search would· be taking place at the Laredo company site. (6) The level of cocaine metabolite found in Sanchez's sample was greater than 2000 times the minimum level. (7) As one of the last company employees tested, Sanchez's sample cup was located at the top of the ice chest, making it easily accessible to being tampered with. (8) The seal used to secure the lid of the sample cup was placed on the side of the cup. (8) The motivation for framing Sanchez included the following:

(A) Sanchez had gone over Carter's head to transfer to a different department. This established a strained relationship.

(B) Theis testified that company payroll was unusually high and Halliburton had just cut back on employees in late 1992. In addition, the thefts at the Laredo plant were cutting into the defendant's profits. This fact, appellant argues, suggests that Halliburton was looking for ways to cut back on employees.

When viewed in the light most favorable to the appellee, Sanchez contends this evidence constituted more than a scintilla of evidence. We disagree.

■ According to Texas case law, an ultimate or material fact may be proven by either direct or circumstantial evidence. *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993). Inferences may be drawn from the evidence presented. *See Motsenbocker v. Potts,* 863 S.W.2d 126, 136 (Tex.App.—Dallas 1993, no writ). As a general rule, however, an inference of an act may not be based upon another inference. *Briones v. Levine's Dep't. Store, Inc.,* 446 S.W.2d 7, 10 (Tex.1969).

When viewing the evidence in a light most favorable to Sanchez, the jury would have had to infer that Theis was using cocaine in Laredo, specifically near the time the drug tests were conducted. They would have also had to infer that Theis aided or worked in conjunction with Carter to taint or switch Sanchez's sample. Furthermore, they would have had to infer that Theis knew he would have tested positive for cocaine on April 13, 1993. Moreover, they would have had to infer that Theis had the ability and opportunity to switch the urine samples. The inferences which the jury drew amounted to impermissible inference stacking. In other words, each inference raised by the evidence would ultimately be premised on another inference. At best, the circumstantial evidence presented amounted to a mere suspicion that Halliburton acted intentionally. Unfortunately, mere suspicion does not amount to more than a scintilla of evidence. *See Browning–Ferris,* 865 S.W.2d at 928 (stating that circumstantial evidence establishing mere suspicion cannot be converted into evidence of a material fact).

In support of its argument, appellee cites *Dean v. Ford Motor Credit Company,* 885 F.2d 300 (5th Cir.1989). Dean was terminated from her employment based on unsatisfactory work performance. Dean sued her former employer claiming violations under Title VII and intentional infliction of emotional distress. She alleged that her immediate supervisor had attempted to frame her by placing company checks in her purse. At trial, her supervisor admitted that he had probably handled some checks which Dean later found in her wallet. In addition, the checks contained a notation in her supervisor's handwriting. Finally, contrary to company policy, Dean's supervisor failed to initial the checks after handling them. The court held that the jury could infer, based on this evidence, that Dean's supervisor had intentionally placed the checks in Dean's purse. *Id.* at 307.

Although favorable to the appellee's argument, *Dean* is factually distinguishable from the present case. In *Dean,* evidence supporting the employer's ability to frame its employee was evident from the supervi-

sor's access to the checks. In the present case, however, that evidence does not exist. What is particular about the present case, and difficult for the appellee to overcome, is that a third party was responsible for the collection of urine samples. Based on Sanchez's testimony and that of SECON collectors Dupuy and Judice, Sanchez handled the urine sample himself and placed the sample in the collection ice chest. No evidence was presented that SECON collectors, Judice and Dupuy, conspired with Theis or Carter to switch the urine samples. In addition, no evidence was presented indicating Theis's motivation for switching the samples.[1] Finally, no evidence was presented that anyone other than Theis may have had the opportunity to switch the urine samples. For these reasons, we do not find that more than a scintilla of evidence existed in the record to establish intent.

### Conclusion

We agree with appellant's second issue, therefore we do not reach the other issues raised on appeal. Accordingly, we reverse the judgment of the trial court and render a take nothing judgment in favor of Halliburton Company.

---

1. Theis testified that he had known Carter since the early eighties, but did not have a relationship which could be described as a friendship.