TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-02-00108-CV






William Jackson Caro and Kathryn F. Caro/Alamo Title Insurance


of Texas, Appellants



v.



Reid Sharp; Brook Hurta; Bastrop Abstract Company, Inc.; Alamo Title Insurance


of Texas; and Dale L. Olson/William Jackson Caro and


Kathryn F. Caro, Appellees






FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT


NO. 23,137, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N




 Our opinion and judgment issued on May 8, 2003 are withdrawn, and the following
opinion is substituted.

 This appeal arises from a real estate transaction in Bastrop County. The trial court
rendered a final judgment that was in part a judgment notwithstanding the verdict (JNOV) resulting
in a take-nothing judgment in favor of all appellees except Alamo Title Insurance of Texas (Alamo). 
The final judgment was in part rendered on the jury's verdict, resulting in a $10,750 damage award
against Alamo in favor of William Jackson Caro and Kathryn F. Caro (hereafter, "appellants"), who
appeal from the take-nothing judgment against the other appellees. As cross-appellees, they seek
to uphold the damages awarded to them. Alamo has filed a cross-appeal seeking to reverse that part
of the judgment awarding damages against it. We will affirm those portions of the judgment finding
that appellants take nothing against the other appellees; we will reverse and render judgment that
appellants take nothing against Alamo as well.


Factual and Procedural Background


 In 1995, the Caros purchased approximately thirty-four acres of land in Bastrop
County from Reid Sharp and Brook Hurta. (1) The transaction closed at Bastrop Abstract Company;
Alamo provided title insurance for the transaction. After the closing, an adverse claim was asserted
against approximately one acre of the land. Appellants filed a claim on their title insurance policy
asking that title to the one acre be cleared. Alamo began the process of curing the adverse claim. 
To defeat the adverse claim, an heirship proceeding was necessary. After clearing title to the acre
into the Caros, Alamo sought a release from appellants. Appellants did not sign a release but instead
filed suit in November 1999.

 Appellants brought various claims against different appellees, asserting fraud,
deceptive trade practices, failure to disclose defects in title, fraudulent misrepresentations of title,
breach of contract, breach of a duty of good faith and fair dealing, and bad faith insurance practices. 
Various causes were dismissed on summary judgment; other causes were tried to a jury. (2) Ultimately,
the court rendered a judgment notwithstanding the verdict that appellants take nothing against all
appellees except Alamo. The court then rendered judgment on the jury verdict assessing $60,750
in damages against Alamo, offset by a $50,000 benefit of appreciation, resulting in the $10,750
award to appellants from Alamo.


Discussion


 Appellants present forty-five issues in five clusters of issues, including "cumulative
error." Many of appellants' issues are stated in the list of issues, but not mentioned again; issues are
not supported by argument, record references, or citation to legal authority. See Tex. R. App. P.
38.1(h); Ebner v. First State Bank, 27 S.W.3d 287, 303 n.28 (Tex. App.--Austin 2000, pet. denied)
(assignment of contention as "issue presented" without argument or authority waived issue); Sisters
of Charity of the Incarnate Word v. Gobert, 992 S.W.2d 25, 31 (Tex. App.--Houston [1st Dist.]
1997, no pet.) (party on appeal bears burden of showing record supports contention raised, and of
specifying place in record at which matters relied on or complained of are shown); Leyva v. Leyva,
960 S.W.2d 732, 734 (Tex. App.--El Paso 1997, no writ) (failure to cite authority in support of point
of error waives complaint).


Issues Attacking the Judgment

 We begin with issue forty-four (3) in which appellants contend that the judgment is not
final because it fails to award prejudgment interest to which they are entitled. Because this judgment
failed to dispose of all of their claims, they conclude that the judgment lacks finality.

 A judgment rendered after a conventional trial on the merits is presumed to dispose
of all issues and parties. John v. Marshall Health Servs., Inc., 58 S.W.3d 738, 740 (Tex. 2001);
North E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897-98 (Tex. 1966). Further, the judgment
denied all relief not granted and stated that it was "a final judgment disposing of all parties and
claims." See & cf. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 205-06 (Tex. 2001) ("Mother
Hubbard" clause no longer automatically renders summary judgment final, but language clearly
intended to indicate finality might). The judgment in this case is final. That a judgment may or may
not have erroneously disposed of a claim does not affect its finality. Accordingly, we overrule issue
forty-four.


Special Exceptions and Continuance

 Issues four through seven attack the trial court's failure to grant appellants' special
exceptions. Appellants' special exceptions asserted that each appellee pleaded at least one defensive
matter such as "failure to mitigate damages" without setting forth enough factual details to give
appellants proper notice to enable them to prepare a defense.

 Pleadings should consist of a statement in plain and concise language of the plaintiff's
cause of action or the defendant's ground of defense. Tex. R. Civ. P. 45(b). Pleadings should give
the parties fair notice of their claims and defenses and relief sought. Perez v. Briercroft Serv. Corp.,
809 S.W.2d 216, 218 (Tex. 1991). The "fair notice" requirement does not require the pleader to
plead evidentiary matters with particularity. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819,
825 n.4 (Tex. 1997); see Roark v. Allen, 633 S.W.2d 804, 810 (Tex. 1982) (plaintiff not required to
plead exactly how doctor used forceps, general allegation that child injured during delivery enough
notice of negligence claim). A party may challenge the adequacy of its opponent's pleadings by
special exceptions. Tex. R. Civ. P. 91. A trial court's ruling that pleadings were sufficient is
reviewed for abuse of discretion. National Life & Acc. Ins. Co. v. Morris, 402 S.W.2d 297, 299
(Tex. App.--Austin 1966, writ ref'd n.r.e.).

 A review of appellees' answers and appellants' special exceptions shows that
appellants sought to have appellees plead their evidence with particularity. Rule 45 does not require
that evidence be detailed in the petition. See Paramount Pipe & Sup. Co. v. Muhr, 749 S.W.2d 491,
494-95 (Tex. 1988). Accordingly, the trial court did not abuse its discretion in overruling the special
exceptions. We overrule issues four through seven.

 Issues one through three assert that the trial court erred in failing to grant a
continuance due to the unavailability of a material expert witness and because defendant's pleadings
were legally insufficient to give appellants fair notice of the factual basis in support of the defenses
and appellants had filed special exceptions to these pleadings; and the trial court erred in failing to
give proper consideration to the underlying objective of the rules of civil procedure in denying the
continuance.

 An appellate court does not disturb a trial court's order denying a motion for
continuance unless the trial court has committed a clear abuse of discretion. Villegas v. Carter, 711
S.W.2d 916, 917 (Tex. 1985); State v. Crank, 661 S.W.2d 91, 94 (Tex. 1984). A trial court abuses
its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1988). 
Before the reviewing court will reverse the trial court's ruling on a motion for continuance, it should
appear from the record that the trial court has disregarded the party's rights. Yowell v. Piper Aircraft
Corp., 703 S.W.2d 630, 635 (Tex. 1986); Royal Mortgage v. Montague, 41 S.W.3d 721, 738 (Tex.
App.--Fort Worth 2001, no pet.).

 Appellants filed suit November 1, 1999. They considered multiple candidates before
hiring Robert Bradshaw as an expert on the title industry and on bad faith insurance practices. 
Appellants first hired Bradshaw in March 2001, sixteen months after filing suit, but did not meet
with him again until July 12, 2001, 46 days before trial. At that time, Bradshaw informed appellants
that he was resigning as their expert due to a perceived conflict of interest. His affidavit regarding
his withdrawal was served on the parties July 24, 2001. On July 25, 2001, Stewart Title (4) signed a
waiver of any possible conflict that Bradshaw might think he had. All defendants agreed that if
Bradshaw refused to testify, appellants could designate a substitute expert after the deadline
previously set by the court. Appellants opted not to seek another expert but to urge the motion for
continuance. Bradshaw's affidavit stated generally that there was a conflict that would create "an
appearance of impropriety" and that he could not determine what effect, if any, the conflict might
have on his testimony. He stated that he was "not interested" in putting himself in a position where
there was such an "evident conflict" and that he would not testify as an expert regardless of any
party's waiver. 

 The court was given no concrete information about the claimed conflict, no
explanation why Bradshaw would not testify after the waiver of any perceived conflict, or why the
other parties' accommodation of a late designation was not adequate relief. Nor is it clear from the
record why appellants' other "bad faith" expert was not adequate. (5) The trial court could have
concluded that the continuance was being sought for delay or that it simply did not have adequate
evidence in front of it to justify granting a continuance because the affidavit was conclusory. See
Tex. R. Civ. P. 251 (continuance may be granted upon sufficient cause shown). Accordingly, based
on this record, we hold the trial court did not abuse its discretion in denying the continuance and
overrule issue one.

 In issue two, appellants contend that the trial court erred in denying a continuance
because defendants' pleadings were legally insufficient to give plaintiffs' fair notice of the factual
bases of the legal defenses. Appellants specially excepted to these pleadings; the special exceptions
were overruled. We have already overruled issues four through seven concerning these special
exceptions. Accordingly, the trial court determination that the pleadings were legally sufficient
stands and the trial court did not err in denying a continuance based on insufficiency of the pleadings. 
We overrule issue two.

 In their third issue, appellants contend that the trial court did not give proper
consideration to the underlying objective of the rules of civil procedure when it overruled appellants' 
motion for continuance:


The proper objective of rules of civil procedure is to obtain a just, fair, equitable and
impartial adjudication of the rights of litigants under established principles of
substantive law. To the end that this objective may be attained with as great
expedition and dispatch and at the least expense both to the litigants and to the state
as may be practicable, these rules shall be give a liberal construction.



Tex. R. Civ. P. 1; see also Bolduc v. Nat'l Union Fire Ins. Co., 839 S.W.2d 152, 154 (Tex.
App.--Houston [1st Dist.] 1992, no writ). The primary purpose of the Rules of Civil Procedure is
to dispose of cases on the merits. Bluebonnet Farms, Inc. v. Gibralter Sav. Ass'n, 618 S.W.2d 81,
84 (Tex. App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.); Olivares v. Service Trust Co., 385
S.W.2d 687, 687-88 (Tex. App.--Eastland 1964, no writ).

 The court carefully considered arguments on the issue whether the trial should be
continued. That the case had been in progress for two years and several of the litigants were ready
for trial were factors to consider, as well as appellants' desire for more time. The trial court did not
ignore the underlying objective of the rule. We overrule issue three.


Summary Judgment

 Issues eight through fifteen attack the grant in part of Alamo's and Olson's motions
for summary judgment. Issues eleven though fifteen are not argued in the brief and are waived.

 In issue eight, appellants contend that they failed to receive twenty-one days' notice
of the hearing on the motions. In issue ten, appellants contend that the motions were filed after the
docket-control deadline for pleadings.

 A motion for summary judgment and supporting affidavits must be filed and served
at least twenty-one days before the time specified for hearing except with leave of court. See Tex.
R. Civ. P. 166a(c). The decision to grant leave to file a supplement to a motion for summary
judgment lies within the sound discretion of the trial court. See Mowbray v. Avery, 76 S.W.3d 663,
688 (Tex. App.--Corpus Christi 2002, pet. denied).

 In this case, the record reflects that appellants received twenty-one days' notice of the
motions for summary judgment filed by Olson and Alamo. On the day set for the hearing of various
motions, including Olson's motion for summary judgment, appellants asked for leave to file an
amended petition which added causes of action. Olson and Alamo then asked to be allowed to
supplement their motions to address these new causes, leaving in place the date set for the hearing
on Alamo's motion for summary judgment some two weeks later. The court allowed the amendment
and also allowed the supplemental motions to be filed, with appellant's response due the day before
the hearing. The amended motions for summary judgment were filed with leave of court; appellants
have not demonstrated an abuse of discretion in the court's granting of leave to file supplemental
motions for summary judgment in response to appellants' amended petition that added a new cause
of action. See Smith v. Atlantic Richfield Co., 927 S.W.2d 85, 88 (Tex. App.--Houston [1st Dist.]
1996, writ denied) (in order to allow court to render final judgment at hearing on motion for
summary judgment when an amended petition adding cause of action was filed less than 21 days
before hearing, supplemental motion for summary judgment had to be filed less than 21 days before
hearing). We overrule issue eight.

 Similarly, in issue ten, appellants claim that the supplemental motions for summary
judgment were filed after the deadline for filing pleadings and therefore they received inadequate
notice. Again, the supplemental motions were filed with leave of court granted at the same hearing
in which appellants were granted leave to file an amended petition. Appellants have not
demonstrated an abuse of discretion in the court's decision to grant leave. See Mowbray, 76 S.W.3d
at 688. We overrule issue ten.

 In issue nine, appellants contend that they should not have had to respond to Alamo's
motion for summary judgment because of the problems with their expert. At least one issue on
which the "bad faith" expert was relevant, i.e., the duty of good faith and fair dealing, was not
decided on summary judgment, but was submitted to the jury. Appellants failed to file any response
to Alamo's motion for summary judgment. On appeal, appellants would have been limited to
attacking the legal sufficiency of the evidence to support the motion for summary judgment. 
Medlock v. Commission for Lawyer Discipline, 24 S.W.3d 865, 870 (Tex. App.--Texarkana 2000,
no pet.). However, appellants waived their points on appeal attacking the substance of the partial
summary judgment in favor of Alamo. Accordingly, the summary judgment in favor of Alamo
would be upheld even if an error had occurred in denying the continuance. For these reasons, and
for those discussed under issue three, we overrule issue nine.


Evidentiary Issues

 Issues sixteen through twenty attack the trial court's exclusion of evidence and
exclusion of certain testimony. Issues eighteen through twenty have not been briefed and are waived.

 In issue sixteen, appellants contend that certain testimony of Mildred [Davis]
Maxwell, one of the adverse claimants to the one acre, should have been admitted to attack the
credibility of appellees Sharp and Hurta. Sharp and Hurta purchased the tract in question from
Tommy Lee Potts, who was acting under a power of attorney on behalf of his parents. Sharp and
Hurta testified that Tommy Lee told them that there was some land "under fence" that he did not
own. (6) He thought it was about an acre, but did not know its exact location so Sharp and Hurta 
needed to have a survey done. The survey showed 1.447 acres inside a fence that Potts did not own
and 0.840 acres outside the fence that Potts did own. None of this land is the one acre claimed by
the Davis family.

 Appellants proposed to have Maxwell testify about the land's ownership. As a child
and teenager, she had lived in a house on that land in the 1950s. That house eventually burned in
the early 1970s. She knew members of the Potts family. The purpose of her testimony was to show
that the Potts knew her family lived on this particular acre of land and so must have known her
family owned that land. Therefore, Tommy Lee Potts must have known which acre he did not own
and must have told Sharp and Hurta. Accordingly, their testimony regarding their lack of knowledge
of the location of the one acre of land must have been false.

 The decision to admit or exclude testimony lies within the sound discretion of the trial
court. In general, an inference may not be based on another inference, that is, inferences may
not be "stacked." See Kelly v. LIN Television of Tex., L.P., 27 S.W.3d 564, 568 n.3 (Tex.
App.--Eastland 2000, pet. denied); Halliburton Co. v. Sanchez, 996 S.W.2d 216, 219 (Tex.
App.--San Antonio 1999, pet. denied). For Maxwell's testimony to contradict Reid and Hurta,
several inferences would have had to be stacked. Maxwell would have testified based on her
childhood memories of growing up in a house on the acre in question. This testimony does not
establish that the Davis family owned that property. Then she would have testified about knowing
the Potts family. That the Potts family might have known that a house was there does not establish
legal title in the Davises. Further, by the time Tommy Lee Potts was showing the land to Sharp and
Hurta, the house that once was on the property had been gone for many years, so he might not have
remembered exactly where the structure had been. Ultimately, the jury would have had to
impermissibly stack inferences or simply speculate to arrive at the conclusion that Tommy Lee Potts
actually knew the exact location of the disputed acre and who its legal owner was and had
communicated this information to Sharp and Hurta, who then concealed it from appellants, contrary
to their testimony at trial. See Briones v. Levine's Dep't Store, Inc., 446 S.W.2d 7, 10 (Tex. 1969)
(although finding may be based on reasonable inference, it may not be based on surmise or
speculation). The excluded testimony could not have been used to accomplish appellant's intended
purpose. We hold that the trial court did not abuse its discretion in excluding it and overrule issue
sixteen.

 In issue seventeen, appellants contend that the trial court erred in failing to reopen 
the case to admit additional evidence offered by Mr. Caro. In testimony concerning the delay in
constructing his house, Caro contradicted his own deposition testimony and finally agreed that the
testimony in the deposition was correct. Appellants wanted to reopen to "explain" this testimony
and to offer additional evidence concerning increased construction costs. Before it overruled the
request, the trial court considered the request, multiple objections, the fact that the jury had been
listening to testimony for eight days, the fact that the proposed reopening would cover ground that
had been covered at least once, and the fact that the case was otherwise complete and it would be
several hours before a recalled witness on costs could appear.

 The decision to reopen a case is within the sound discretion of the trial court. 
Universal Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 580 (Tex. App.--Austin 2000, no pet.);
Turner v. Lone Star Indus., Inc., 733 S.W.2d 242, 245 (Tex. App.--Houston [1st Dist.] 1987, writ
ref'd n.r.e.). The trial court should permit a party to reopen when it clearly appears necessary to the
administration of justice. Tex. R. Civ. P. 270. The party seeking to reopen must show: (1) diligence
in obtaining evidence, In re A.F., 895 S.W.2d 481, 484 (Tex. App.--Austin 1995, no writ); Word
of Faith World Outreach Ctr. Ch., Inc. v. Oechsner, 669 S.W.2d 364, 367 (Tex. App.--Dallas 1984,
no writ); (2) the additional evidence is decisive, A.F., 895 S.W.2d at 484; Word of Faith, 669 S.W.2d
at 367; (3) the reception of additional evidence will not cause undue delay or any injustice. A.F., 895
S.W.2d 484; Word of Faith, 669 S.W.2d at 367.

 Appellants have not demonstrated how contradicting already contradicted testimony
would be decisive. In overruling the request, the court noted the length of the trial. In general,
appellants have not shown that reopening was necessary to the administration of justice, or that it
would not cause undue delay. Finding no abuse of discretion in the trial court's ruling, we overrule
issue sixteen.


Jury Charge

 Issues twenty-one through thirty-two raise various attacks on the jury charge. Issues
twenty-one through twenty-five and twenty-seven through thirty-two are waived for lack of briefing. 
The only issue briefed is issue twenty-six in which appellants contend that the trial court erred in not
submitting their proposed charge on statutory fraud on the part of Sharp and Hurta.

 A party should submit its proposed charge in clusters of related requests. A single
request with a large number of questions, instructions, and definitions is vulnerable to being denied
in its entirety. See Tempo Tamers, Inc. v. Crow-Houston Four, Ltd., 715 S.W.2d 658, 666 (Tex.
App.--Dallas 1986, writ ref'd n.r.e.) (20 questions in one request); Hoover v. Barker, 507 S.W.2d
299, 305 (Tex. App.--Austin 1974, writ ref'd n.r.e.) (54 questions in single request). The trial court
is "not required to search through the requested issues and submit those which are proper and refuse
those which are improper." Edwards v. Gifford, 155 S.W.2d 786, 788 (Tex. 1941).

 When the court refuses or modifies a request, it should endorse the request as
"refused" or "modified" and sign it. Tex. R. Civ. P. 272, 276. If the court does not indicate its
ruling on the request, no error is preserved. Munoz v. Berne Group, Inc., 919 S.W.2d 470, 472 (Tex.
App.--San Antonio 1996, no writ; Anderson v. Vinson Expl., Inc., 832 S.W.2d 657, 668 (Tex.
App.--El Paso 1992, no writ). If, however, the record clearly shows the request was refused, even
if the trial court did not sign the refused instruction, error is preserved. See Dallas Mkt. Ctr. Dev.
Co. v. Liedecker, 958 S.W.2d 382, 386 (Tex. 1997) (trial court's endorsement not only method of
preserving error); Chemical Express Carriers, Inc. v. Pina, 819 S.W.2d 585, 589 (Tex. App.--El
Paso 1991, writ denied).

 In this case, the record shows appellants submitted to the trial court a "Proposed Jury
Charge" consisting of thirty pages of questions, instructions, and definitions. (7) The requests are not
clustered by related issues. There is no endorsement to be found on the charge. In the charge
conference, appellants first stated that they had no objection to almost everything that was in the
court's proposed charge. Appellants then requested submission of a definition for fraud, statutory
fraud, fraud based on concealment; they then requested that question two (deceptive act or practice)
with multiple definitions be submitted. Next they asked that fraud be submitted; then insurance code
article 21.21 claims; then negligence; then back to statutory fraud; then breach of fiduciary duty. 
Finally, they objected to an instruction that was to be submitted. The court simply denied the entire
request. In their written proposed charge, appellants listed one question asking whether "any of the
following" committed fraud, then listed all defendants. They then had a question asking whether
Sharp or Hurta committed statutory fraud, but crossed out the word "statutory." The proposed
summary then asked for the following instruction: "Statutory fraud occurs when--" but again they
crossed out the word "statutory" and capitalized "fraud." Each proposed question used a different
definition.

 Among other problems, it is not clear that appellants submitted a requested issue on
"statutory fraud" since the written submission strikes through the word "statutory." Without that
word, the instruction under that issue is incorrect. The charge conference was not enlightening. 
Ultimately, the court was not required to pick through appellants' issues and attempt to ascertain
what appellant really meant with regard to the fraud issue as opposed to what appellants said. As
the trial court was presented with an undifferentiated mass of issues and instructions, it was not error
simply to overrule the entire request. See Tempo Tamers, 715 S.W.2d at 658. We overrule issue
twenty-six.


Cumulative Error

 In issue forty-five, appellants contend that the cumulative effect of the trial court's
errors denied them a fair trial. Appellants argue that even if each erroneous trial court ruling against
them were harmless when analyzed separately, their combined effect was harmful. See Strange v.
Treasure City, 608 S.W.2d 604, 609 (Tex. 1980). The cumulative error doctrine has found little
favor with appellate courts. Crescendo Inves., Inc. v. Brice, 61 S.W.3d 465, 481, 481 n.16 (Tex.
App.--San Antonio 2001, pet. denied). We have held when there are no errors we reject cumulative
error issues. See Owens v. State, 96 S.W.3d 668, 673 (Tex. App.--Austin 2003, no pet.) (citing
Chamberlain v. State, 998 S.W.2d 230, 238 (Tex. Crim. App. 1988) (although conceivable that a
number of errors may be found harmful in their cumulative effect, non-errors may not in their
cumulative effect cause error)). As noted by one commentator, the cumulative error doctrine is
essentially "swallowed" by reversible error analysis, which involves an examination of the whole
record, including other errors. W. Wendall Hall, Standards of Review in Texas, 34 St. Mary's L. J.
1, 25 (2002). We have found no errors, hence there can be no reversal based on the cumulative
effect of all errors. We overrule issue forty-five.


Cross-Appeal


 Appellee Alamo brings three issues in its cross-appeal: (1) whether the jury
instruction on breach of duty of good faith and fair dealing should not have been presented to the
jury; (2) whether the evidence is sufficient to support the judgment for breach of the duty of good
faith and fair dealing; and (3) whether an award of damages was proper for loss of use, increased
construction costs, expense in removing construction, loss of time from work, expert fees and mental
anguish.

 Alamo objected to the submission of the charge on the specific basis of a lack of
evidence. It did not, however, ever raise the issue with the trial court that the decision on the breach
of contract issue foreclosed submission of the charge on breach of duty of good faith and fair dealing. 
Accordingly, issue one is waived on appeal. See Tex. R. App. P. 33.1(b). In its second issue, Alamo
contends that the evidence was insufficient to support a judgment against it for a breach of the duty
of good faith and fair dealing.

 The statutory and common-law standards for breach of the duty of good faith and fair
dealing are identical. Mid-Century Ins. Co. v. Boyte, 80 S.W.3d 546, 549 (Tex. 2002); Universe Life
Ins. Co. v. Giles, 950 S.W.2d 48, 55 (Tex. 1997). An insurer breaches its duty of good faith and fair
dealing by denying or delaying payment of a claim when "the insurer's liability has become
reasonably clear." Giles, 950 S.W.2d at 55. Evidence of a bona fide dispute does not establish a
breach of the duty of good faith and fair dealing. Provident Am. Ins. Co. v. Castaneda, 988 S.W.2d
189, 194 (Tex. 1998); State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997).

 The issue of the breach of the duty of good faith and fair dealing "focuses not on
whether the claim was valid, but on the reasonableness of the insurer's conduct" in handling the
claim. Lyons v. Millers Cas. Ins. Co., 866 S.W.2d 597, 601 (Tex. 1993). Reasonableness is
determined using an objective standard of whether a reasonable insurer under similar circumstances
would have delayed or denied payment of the claim. Aranda v. Insurance Co. of N. Am., 748 S.W.2d 
210, 213 (Tex. 1988). Whether an insurer breached its duty of good faith and fair dealing is a fact
issue. Giles, 950 S.W.2d at 56. Moreover, the question of whether an insurer's conduct is
reasonable in the face of acknowledged liability is one peculiarly tailored to the province of the jury. 
See id. In determining whether the evidence is legally sufficient to support a judgment for breach
of the duty of good faith and fair dealing, we resolve all conflicts in the evidence and draw all
inferences in favor of the jury's findings. Id. at 51.

 Alamo accepted the claim and began work promptly. Ultimately, the claim was paid
and appellants have received clear title to all of the property. The crux of the matter is whether the
amount of time between the initiation of the investigation and the final receipt of title constituted an
undue delay. (8) Michael Quinn, appellants' bad faith expert, testified that the amount of time
consumed was unreasonable, that the title company itself could have filed the heirship proceeding,
and that a determination about outstanding liens could have begun earlier than it did. Bobby Taylor,
the attorney for Maxwell/Davis family, testified that Maxwell knew who the potential heirs were and
how to contact them in November or December of 1997. The necessary steps in both the heirship
proceeding and the identification of liens could have begun earlier. We find this evidence legally
sufficient to support the jury's finding.


Damages

 In its third cross-point, Alamo attacks the various elements of the damages awarded, 
contending that there is no evidence to support the jury award of damages for mental anguish. In
conducting a legal-sufficiency review, we review the evidence in a light that tends to support the
finding of the disputed facts and disregard all evidence and inferences to the contrary. Lewis
Construction, Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2000); Bradford v. Vento, 48 S.W.3d 749,
754 (Tex. 2001). If more than a scintilla of evidence exists, it is legally sufficient. Harrison, 70
S.W.3d at 782. More than a scintilla of evidence exists if the evidence furnishes some reasonable
basis for differing conclusions by reasonable minds about a vital fact's existence. Id.

 To recover mental anguish damages, plaintiffs must introduce direct evidence of the
nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in
their daily routine. Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 54 (Tex. 1997); Wellisch v.
United Servs. Auto. Ass'n, 75 S.W.3d 53, 59 (Tex. App.--San Antonio 2002, pet. denied). To
recover for mental anguish, a plaintiff must prove such painful emotions as grief, severe
disappointment, indignation, wounded pride, shame, despair, or public humiliation. See Willisch 75
S.W.3d at 54; King v. Graham, 47 S.W.3d 595, 609 (Tex. App.--San Antonio 2001, no pet.). 
Mental anguish is something more than mere worry, anxiety, vexation, anger, disappointment,
resentment, or embarrassment. Texas Farmers Ins. Co. v. Cameron, 24 S.W.3d 386, 394 (Tex.
App.--Dallas 2000, pet. denied).

 Appellant William Caro testified that he was afraid of various complications, such
as problems with the loan to build the house. However, no such complications materialized; i.e., he
never had to deal with the fear of foreclosure. Caro said at one point he was a little more "snappy"
with his wife but he never consulted a physician, therapist, minister or other counselor, nor did he
take medication. He was able to function at work. Appellant Kathryn Caro testified that she was
stressed and anxious. She did not consult a doctor, either.

 Appellants' testimony fits squarely within the category of "mere worry" which will
not support the recovery of mental anguish damages. Viewed in the most favorable light to the
finding, it establishes only that appellants were anxious and upset, but does not rise above the level
of "mere worry." There is no evidence to support the award of damages for mental anguish. 
Accordingly, we reverse the jury's award of $30,000 for mental anguish. (9)

Conclusion


 Our conclusion that the mental anguish damages may not stand reduces the total
amount of the jury award to $30,750. The trial court found that a $50,000 benefit had already
accrued to the Caros. Accordingly, the Caros are entitled to no additional damages. We therefore
reverse that part of the judgment awarding the Caros $10,750.00 and render judgment that the Caros
take nothing against Alamo. We affirm the remainder of the judgment.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed in Part; Reversed and Rendered in Part

Filed: June 12, 2003

1. Hurta and Sharp worked for the First National Bank of Bastrop. They bought the property from
Tommy Lee Potts, who was a friend of Hurta's father-in-law. They bought the property, "cleaned
it up a little bit" by clearing brush, and then put the property up for sale.
2. Particular claims against each appellee and their disposition will be discussed only as relevant
to a specific issue. For example, only one issue is relevant to appellee Olson, who performed a
survey in connection with the land sale.
3. In issues thirty-three through forty-four, appellants raise various attacks on the judgment. 
However, the only issue not waived is the forty-fourth issue challenging the judgment's finality. 
4. Stewart Title is not a party to the case; Stewart owns part of Bradshaw's title-company
employer.
5. Much of appellants' complaint in their brief that the other expert could not substitute for
Bradshaw seems to be based on his "not holding up well" under cross-examination, a factor not
before the court at a pretrial proceeding.
6. Apparently, there were numerous fences on this and adjacent property, not all of which
coincided with actual property lines.
7. Appellants do not refer us to the pages of the record containing their proposed charge. We
assume the one found in the clerk's record signed by appellants as their "Charge of the Court" is the
correct one.
8. Appellants also argue that Alamo was unreasonable in denying payment for consequential
damages that it owed under the policy. Even appellants' own expert declared the policy ambiguous.
A policy coverage dispute is not an unreasonable delay. Castaneda, 988 S.W.2d at 189.
9. Because we find the evidence legally insufficient, we need not address Alamo's factual
sufficiency concerns.